Argued March 29, modified April 30, 1918.

### LYTLE *v.* RAMP.*

(172 Pac. 503.)

Contracts—Legality of Object—Testamentary Contracts.

1. Contract, in consideration of care and support, to give land and cancel note and mortgage for money loaned to build on the land, on full performance by the mortgagors, is enforceable.

Contracts—Evidence—Sufficiency.

2. In suit to cancel note and mortgage, evidence *held* insufficient to warrant cancellation on ground of contract to give lot and cancel note in consideration of care and support.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.

This is a suit for the cancellation of a note and mortgage. The substance of the complaint is, that plaintiffs are husband and wife, the husband being a grandson of Mary A. Ramp, now deceased; that during the lifetime of the latter she entered into a contract with plaintiffs wherein it was agreed that plaintiffs should move to a place adjoining the premises occupied by Mrs. Ramp and live there and look after, care for, and help her during the remainder of her life; that in consideration of such services, at the death of Mrs. Ramp, plaintiffs should become the owners of the premises so occupied by them, free from all encumbrances; that Mrs. Ramp advanced them money to the extent of $1,800 with which to build the house in which they lived while looking after and caring for Mrs. Ramp, who was a helpless invalid; that as evidence of such indebtedness, for the money so advanced, plaintiffs executed their promissory note, and a mortgage upon the premises referred to, and delivered the same to Mrs. Ramp; that the mortgage covers the

*On sufficiency of evidence to support a recovery for services rendered by relative or member of household, see note in 11 L. R. A. (N. S.) 893.                                      REPORTER.

property which Mrs. Ramp had agreed to give to plaintiffs as compensation for their services; that the note and mortgage were executed and received merely as evidence of the amount of money so advanced, it being agreed that if plaintiffs fully complied with the terms of the foregoing agreement, the note and mortgage should be canceled. It is also alleged that plaintiffs fully performed their part of the contract, but that Mrs. Ramp failed to cancel the note and mortgage, and that the defendant, who is the executor of the last will and testament of Mrs. Ramp, refuses to cancel or satisfy the same.

The answer is to the effect that Mrs. Ramp sold the lot to plaintiffs for $500, advanced money for building the house, and that the note and mortgage represent this indebtedness together with other moneys due from plaintiffs to decedent for certain personal property and small loans. The contract relied upon by plaintiffs is denied. It is admitted that plaintiffs rendered services to Mrs. Ramp, but that they were fully paid by her before her death. There are other affirmative defenses pleaded, but as they are not essential to the discussion here, they are not set out.

A reply having been filed, there was a trial resulting in a decree for plaintiffs in accordance with the prayer of the complaint, and defendant appeals.

MODIFIED.

For appellant there was a brief with oral arguments by *Mr. Carey F. Martin* and *Mr. Rollin K. Page.*

For respondents there was a brief over the names of *Mr. Walter C. Winslow* and *Mr. Samuel M. Endicott,* with an oral argument by *Mr. Winslow.*

BENSON, J.—1. That such a contract as that set out in the complaint is enforceable is too well settled to re-

quire a citation of authority. The only question for
our consideration therefore, is the weight and suffi-
ciency of the evidence. Whatever agreement was had
in the matter, was between the plaintiff Charles A.
Lytle and Mrs. Ramp, and since it rests entirely in
parol, we must look exclusively to the testimony of
Mr. Lytle to discover its terms. The record discloses
the fact that Mrs. Ramp was a helpless invalid, whose
only means of moving around was a wheeled chair into
which she must be lifted by others. The plaintiffs for
some time prior to the incidents involved herein, had
been living in rented apartments reasonably near to the
home of Mrs. Ramp, to whose interests and welfare
they were admittedly alert and faithful. However
circumstances developed which seemed to make it ne-
cessary for them to seek a different residence, and Mrs.
Lytle told Mrs. Ramp that they were seriously consid-
ering the purchase of a lot in South Salem and the
building of a house thereon, upon the installment plan.
This appeared to give the old lady great concern, since
it would remove her grandson and his family so far
from her residence as to render communication with
them inconvenient and difficult. She therefore sug-
gested that they build a house on the ground in con-
troversy, and asked Mrs. Lytle to send her husband
over to discuss the matter with her. Mr. Lytle then
visited his grandmother and his account of the con-
versation is as follows:

"I said, 'I haven't the money to build, and haven't
the money to buy the lot.' She said, 'Well, someone
is going to get the lot anyway, I have to have someone
that is kin to me to look after and take care of me; I
am thrown among strangers to look after me and at-
tend to little errands and business I don't like to trust
in the hands of strangers.' She said someone was
going to get it. She said, 'You may just as well have

it as anyone else.' I said I didn't have the money she set on the price of the lot, but she said, 'It is not for sale, but if you want to come here, I will let you have the lot; someone is going to get it, and you and Julia might as well have it.'

"Q. Who is Julia?

"A. That is my wife; so I talked to her about the lot and house, and she said, 'What did I think it would require,—how much money to build on to the granary and build the house?' I said, 'I haven't any idea.' She said, 'You could figure and find out how much it will be; I have some money, and I have to have someone here to look after me; you might just as well have it as someone else.' I got figures, and had different contractors figure what it would be, and no one got within the amount of money she seemed to be willing to let me have; she thought five hundred dollars should he enough to build on the granary,—to build on,—and five hundred dollars wouldn't reach the required amount; so I got figures and told her what they were; I didn't say whether I was going to take it; and she sent for me again. She said, 'What have you made up your mind?' I said, 'Grandma, I don't know what to do.' I says, 'We hate to get in debt for a house and build when I ain't got only my work,—the only way I have is my hands to make this money,—that is a whole lot to get in debt.' She says, 'I know it is, but I think you can make it'; and she encouraged me in it. I didn't say anything, but got their figures, and come in the means she would let me have to build the house; I got figures so it made it possible to build the house if she would let me have that amount of money. We let the contract for the house. That is practically the conversation in regard to the building of the house; every time I was there she spoke about the money, but she never said any more than that someone would get the lot, and we might just as well have it as someone else, for she had offered to people coming there that she would give them the lot to look after her."

2. A careful reading of this testimony clearly establishes an agreement on the part of Mrs. Ramp to give

plaintiffs the lot upon which the house was subsequently built, but falls very far short of anything like a contract to give them the money for the erection of the building. The $1,800 for which the note and mortgage were executed, included other obligations besides the value of the lot and the money advanced for the construction of the dwelling. It is agreed, throughout the record, that the lot was valued at $500 and as to the contract in relation thereto, Lytle's testimony is abundantly corroborated by other witnesses, and we therefore conclude that plaintiffs are entitled to a credit of $500 upon the note in question, and a decree will be entered here to that effect, neither party to recover costs.                                    MODIFIED.

McBRIDE, C. J., BURNETT and BEAN, JJ., concur.